Our next case is No. 23-2298, VLSI Technology v. Patent Quality Assurance. Okay, Mr. Lampkin. Thank you. It may please the Court. Apart from the issues common to both cases that my colleague addressed, the decision in PQA departs from reasoned decision-making, the fundamental requirement of the APA, repeatedly. So much so that in the end, despite finding abuse of process, efforts to extort, deliberate violations of discovery orders, and misrepresentation, the director issued only an admonition to PQA, where we don't even know who PQA is. We don't know who is behind it and who formed it. And the reason we don't know is because of the discovery violations for which the admonition is supposedly a remedy. I'd like to focus on three specific departures from the decision-making requirement. First is the arbitrariness in choosing the remedy here, like finding PQA abused the IPR process for an improper purpose, for extracting money, and then completely disregarding that when choosing the sanction. The contrast between the initial decision in December 2022 and the final one could not be more stark. The findings just disappear. Second, providing legally mistaken and facially indefensible justifications for not allowing discovery in connection with that whistleblower report. And finally, the failure to address a central limitation on the merits. The fact that we have to have a pivot back and forth in terms of what the switch between the first regulated voltage is. You go back up and down as opposed to all the prior art, which is always talking about switching to the second and never switching back to the first. If I can start with the arbitrary decision in terms of the selection of remedies. The point isn't that this was an impermissible choice, although we think it was. But the point is that when the director exercises discretion, she has to exercise that discretion consistent with the APA. Congress coupled discretion with reasoned decision making. So even if the ultimate result is within the range of permissible outcomes, you have to provide a reasoned justification. And here the director found in her initial decision that PQA was formed, quote, for the express and sole purpose of extracting payment from VLSI. That it pursued the IPR, quote, with a singular focus on using an AIA to extort money. And finally, that threatened to file another IPR if VLSI didn't pay up. That it flouted discovery orders and it would mislead the agency. But when you go to the December decision, when an actual remedy is selected, those things just – excuse me, you go to the August decision, those things just disappear. The only things mentioned are failure to comply with – What's the significance of joining Intel? Why was Intel joined? So why was Intel joined? Intel wanted to participate in these proceedings and asked for a jointer, filed an untimely, blatantly, agreedly, untimely petition, and then asked to be joined as a party. And that's not permissible under the statute because the statute says it has to be a properly filed petition. And this is not a properly filed petition. And that should be reviewable because it says – go ahead. Even if you were right, which contrary to what the Supreme Court said in Thrive, why isn't it a harmless error that they're joining as a party under a verdict? Yes, because first, the director initially dismissed PQA out of the case. And with the director having chosen that, it's entirely plausible that the director would have terminated the case entirely if Intel had not been there. And so there's potential prejudice from that. And even if this court can't decide which way it would have gone at that moment in time, the almost inevitable rule, the rule that the Supreme Court has always pointed to is once that error is identified, the outcome is to send it back to the agency. The court's job is done. You send it back to the agency to determine what the agency would like to do once that error is laid bare. And that's exactly the remedy it would be here. If Intel was not properly joined, it goes back to the agency to determine, well, what would we do? And we already know that the agency currently says it would not have decided the case the same way. And so this one really does need to go back. If I return back to, though, the actual selection of remedy. Before you do that, what's the significance that Intel waived its invalidity defenses at trial, and now it appears in an IPR that's handling the same issues, basically the same parties, even though we may not know who they are? Yeah, and I think that's something that Nasalok actually addressed, was that you are claim against you. Yeah, but it's not a final judgment. Under Fresenius, there's specific holding that until there's a final judgment, there's no preclusion. No, it is a final judgment in this case because in VSI versus Intel, 87F4 at 1352, the court affirmed the judgment of infringement. And what is Intel trying to get out from under? Exactly what Fresenius said wasn't a final judgment. It was, but there is a final judgment of infringement here. And Fresenius, no, I don't think Fresenius addresses it. They have a final judgment on liability as long as damages are open. It's not final. It's not final, but in Fresenius, they didn't address where there's a global, with the judicial judgment is final before the attack occurs. Here, there was a final judgment in place before the collateral attack occurred. And that's something you simply cannot do consistent with claim preclusion. Intel, if it had good arguments on the merits here, certainly it would have raised arguments at trial and said, this is obvious. But instead, it waived obvious and it went with one grounds only and waived it away. And yet now we have another case where Intel is back before this court through an agency attacking what courts have already adjudicated. And that's what claim preclusion should prevent. But claim preclusion, the issues that were before the district court and the issues presented in the IP are different, are they not? Yes, that's why it's not an issue preclusion. That's precisely correct. And that's why we wouldn't be able to argue issue preclusion because for that, for issue preclusion, the issues must be identical and the standard has to be the same. You can't have a difference from the standard. But when you're talking about claim preclusion, particularly this branch of claim preclusion, which is a collateral attack on a prior or final judgment, that doesn't matter. It's protecting the integrity of the judgment of the court. And it means you can't go behind it. Wright and Miller says it doesn't matter that the standards are different. It doesn't matter that the issues are different. You cannot on collateral attack the final judgment, which is exactly what the problem was. Have you read Fresenius? Yes, Your Honor. I've read Fresenius. I don't know. How do you distinguish it? I mean, it deals specifically with the situation in which there's a final judgment on liability, but not on the rest of the case. And that means there's no preclusion. So as I understand Fresenius, Fresenius was not necessarily looking at claim preclusion. It had issue preclusion. And in addition, I don't believe Fresenius is a case where after final judgment, some party then goes to the agency for the purpose of collateral attacking. But even if it's claim preclusion, if there's no final judgment, it's not proper. Yeah. Well, I think the issue is you don't have to be collaterally attacking the entirety of a judgment. You're collaterally attacking what the court has already done. And in this case, the court had already determined there was liability and you're trying to undermine or diminish the rights. But if I could turn briefly back. I don't think Fresenius said, well, you could have a partial final judgment. It's either a final judgment or it's not. Well, I think what it is, is it in, I do not think it's correct to say that Fresenius says that if you have some part of the judgment that's outstanding, that you can collaterally attack it by going to an agency to try and undermine it. But even here, and let me know if I'm wrong, the only outstanding issues is that before the district court is damages. And Intel has not only that, a difference also in this case, and some more occasional is that Intel here has waived its invalidity defenses. So even if a situation happened where an invalidity or infringement issue was to spring up before the district court, isn't Intel precluded from participation on that? Intel is very much precluded in the district court and it should likewise be precluded to the same extent from trying to come after us in the agency. Unless Congress has, by some implications, said, we're going to get rid of claim preclusion and there's simply nothing in the statute that suggests that. The AIA postdates nasal lock and we believe that nasal lock should be controlling here. If I could return very briefly though to the omission of when you take a look at the final decision of the director to say, I am going to choose an admonition, not even sanctions, not even monetary fees. It rests entirely on two things, the failure to comply with discovery and the misrepresentation regarding the expert. Entirely gone from that is the abuse of process. The fact that there was an extortive attempt. The fact that they formed themselves for the specific purpose of improperly using an IPR to try and extract money. It's almost like out of a mob movie where they said, you know, you sure got a pretty nice patent and a nice judgment there. It would be a shame if something happened to it. That entirely disappears from the director's decision when she's choosing sanctions. That's the epitome of arbitrary and capricious. So why isn't your client guilty of abuse of process also by offering to pay millions of dollars to settle the case? In fact, the settlement negotiations were, in this case, were initiated by your client. That's correct, but that's because the restatement second comment B addresses exactly that situation. It's okay to have settlement negotiations for something that was initiated in good faith in the first place and then you go on to settle. But if you initiate the proceeding for the purpose, for a purpose that this proceeding isn't available for, so you initiate it for the purpose of extracting money, that's improper and it becomes actionable, becomes sanctionable misconduct. If you then execute on it by demanding money, by making extortive demand. We have not initiated a proceeding in bad faith for a wrong reason. We were not formed for the purpose of trying to... Makes it sound as though the initiation is the issue which would not be appealable, right? Pardon? That makes it sound as though the claim is that the initiation was improper, which would seem to be precluded and not an appealable issue. I think there's two answers to that, Judge Dyck. The first is what I'm talking about now is the choice of sanctions, which would include things like fees, right? Choice of sanctions up and down, whether or not it's termination or not. The second, even going to the question of, you know, what the relief would be, the director's own regulations say flat out she can give judgment in a case. That's not de-instituting. She can order termination. In the IVM case, that isn't institution. These are all things that are available separate and apart and independent of institution. But even turning back to that, Your Honor, I think the critical problem here is under Fox versus... The Fox case in the Supreme Court, you can't simply ignore your prior findings. You can't simply say there was horrendous misconduct. You were formed for the purpose of extorting money. You then implemented that by demanding money. And yet, ignore it in a later decision, just simply ignore those findings altogether as if they're not there. I don't think anybody has come together with come with a satisfying reason why all that suddenly became irrelevant when selecting sanctions. I just... Does the director not have the discretion to back off from an earlier position and say I'm not going to press that part of the case? Well, certainly the director has the ability to reconsider, right? But under the APA, and this is the case of FCC versus Fox televisions, the Supreme Court cases, an agency cannot simply disregard contrary or inconvenient factual determinations that it made in the past. And likewise, the director said I need to have a proportionate sanction. That's her standard, proportionate. You can't simply ignore the most horrific misconduct. And this is horrific. I mean, the director here may have decided that, well, I'm not sure I have a proper basis to assert abusive process, so I'm not going to press that. I'm going to just let that slide. I'll focus on the things that I think matter and go forward from there. So if the director had actually said, you know what, this is not a proper abusive process, I would have a different argument. But the director actually rejected arguments that it wasn't a proper abusive process case, both at Appendix 88 and again at 235. She said, you can be punished, even if it was meritorious from the outset, based on your misconduct afterwards. And that includes following up on your extortionary scheme by demanding the money. That includes trying to cover it up by stonewalling discovery. And the notion that somehow we are going to have here just an admonition, we don't even know who we're admonishing, we don't even get fees, that doesn't make any sense. And the director never really justified it, specifically ignoring their horrendous conduct. I mean, and going to the fees, it simply cannot be reconciled with the outcome in OpenSky. In our case, she denied fees, quote, because VLSI has not shown how the conduct at issue in this case, failure to comply with discovery, resulted in harm to VLSI. But we actually got fees for that exact thing in OpenSky. In this case, we said VLSI's work during the director review process was increased by PQA's refusal to comply with the director's orders. Then you go to OpenSky and why did we get fees there? OpenSky's failure to comply with mandated discovery further harmed VLSI during the director review. You can't reconcile those two. They're absolutely opposed to each other. And finally, I think the director ultimately didn't explain why this produces meaningful deterrence. She asserted it in a sentence, but doesn't really explain it because the message to someone is, you know what, if you go in with extortionate attempt, that has more credibility because I may just let this go forward and your attempt may be able to follow through, or I'll substitute intel and they can follow through on your extortion. So it makes the idea of extortion better, more credible. And it tells the victim, the person who's the victim of extortion, that you'd better give in now because if you don't give in, this may follow through. The director will just simply yell at the wind and say, I don't know who you are, I don't know why you did, I know why you did it, but I'm just going to say, you know, don't do it again whoever you are. But that really doesn't match the misconduct, especially when you don't know who is at issue. If I could turn very briefly then, I don't believe I'm into my... Why is it proper for your client to offer millions of dollars to settle something which your view is it's improper to settle? No, I'm not saying it's improper to settle. The abusive process is attempting to extract from somebody in a proceeding something the proceeding doesn't offer. So you can't threaten to destroy their patent in a proceeding that doesn't allow you to get monetary relief. That's the improper. And then if you add to that, you follow up and demand the money, that's improper. So any amount of money they asked for was improper? I think it has to be coupled with, Judge Dike, has to be coupled with the bad intent in bringing the proceeding in the first instance, as the follow-through, and the discovery misconduct, and the misrepresentation. That would seem to invoke the appealability bar. No, Your Honor, it does not. I mean, Prosser and the restatement are all clear that if you bring it for the improper purpose... You're not addressing the appeal bar here, right? Well, no, we're just addressing whether this constitutes misconduct. And it's absolutely misconduct to bring an IPR to try and extort money, and follow up on that, and then to try and hide it by stonewalling discovery. And then the question becomes, what's the sanction? And the sanction of an admonition just doesn't make any sense. But to respond to your question, offering to pay money to settle a case, when you haven't improperly invoked the IPR process yourself, we didn't do anything to say we're formed the purpose of extorting money through an improper process. When none of those things occurred, it's not improper to offer settlement. What's improper is to pull in, go into a proceeding for a purpose for which it was not intended. And I think Prosser and the restatement are clear, in trying to get money for an ulterior purpose. And that precisely describes what happened here. In a hypothetical case where someone files an IPR, and during the course of the proceeding engages in some discussions with the patent owner, and they come to an arrangement, and they say, listen, we'll back off. We'll dismiss the IPR. If you pay us so much money, we'll be happy. We'll go away. And is that extortion? No. And that's exactly why the restatement comment B distinguishes going into something with a primary intent of getting a concession that you cannot get in that proceeding and going in with the proper intent of trying to get it. Somebody charged with infringement and says, I don't think this patent is worth the paper it's printed on, and I don't think they have an infringement case. But I'm going to go to the patent office while this is pending, and I'll a settlement. And maybe they go into this whole thing with the idea that, you know, listen, we've been charged with infringement, but this patent may be very worth, may be worth a lot of money to the patent owner. And, you know, maybe we can get some money out of this if we work out a deal. We can turn the tables. They came after us, but now we're going to leverage the fact that this patent might be worth a whole lot more to the patentee than this case. I mean, where do we start drawing the line if that's what we're talking about? I think the reason it answers that in comment B and says, if your primary purpose is to get a concession, to get an ulterior benefit that the proceeding doesn't allow, that's a problem. If it happens to just work out that way, that's fine. But in the end, what really matters here under SEC versus Chenery is what was the director's rationale for the result. The director didn't go through any of this. The director simply disregarded her prior determinations of abuse of process, misuse of the IPR process, just set them aside. And that's just the one thing you can't do. But the director had all kinds of other considerations to take into account, like the value of the patent system in maintaining and eliminating patents that are questionable validity. Yes, of course. But when you're trying to—this is basic APA, Motor Vehicles Administration versus State Farm. You have to take the considerations that are issued, the facts found, and tie them to the result reached. And looking at the most serious accusations of misconduct at one point and saying, here's what I'm going to do. I'm going to take those into account. And then another point, simply disregarding them, that's just a violation of the decision-making requirement. The Fox case says, absolutely, you can't simply disregard your prior findings. That's what happened here. I see that my red light is on. Thank you. Two minutes for rebuttal. Thank you. Mr. Fleming. Good morning again. May it please the Court. Mark Fleming from WilmerHale with Stephen Horn on behalf of Intel. I'll start with claim preclusion, unless the Court would like me to start somewhere else. And Judge Reyna, I think it's—the question that you asked is critical. I want to make sure that I answer it completely, which is whether the proceedings open on remand in the district court solely have to do with damages. And the answer to that question is no. This Court, in its 2023 decision, also remanded our license defense, which is a defense of liability. And this Court recognizes, on page 1351 and 1352 of the opinion, that the result of the license defense could be outright dismissal or summary judgment in Intel's favor. I'll note that that defense, in a separate parallel case, went to a jury trial on a subsidiary factual issue. So the nature of the defense is Intel has a license from Finjan, and it covers all patents that are owned by Finjan or an affiliate under common control with Finjan. And both Finjan and VLSI are owned by Fortress. And the jury in that parallel case found that Finjan and VLSI are under common control. And if that argument prevails in this case, as we've asked the district court to do—to apply, then you're going to have a situation where Intel is licensed to the 373 patent, and there will be judgment of non-infringement, because you can't infringe a patent that you're licensed to. That is an open issue in this case, and that, completely in addition and separately from the Fresenius point, is a reason why there is no final judgment that could be preclusive against Intel. Thank you. And so I want to be very clear about that, because it's something I think the briefs are talking past each other a little bit on that. You can't have claim preclusion if the supposedly precluding case has not gone to final judgment. There's a separate response, a separate point, an independent point here that also goes to the Joinder question, which is that they haven't shown any cognizable prejudice from either the Joinder of Intel or the failure to claim preclude Intel, because just like in the Mangrove case, Intel was only an understudy here. It raised no new challenges in the IPR. It added no new significant issues. The board didn't change its schedule. PQA took the active lead role up to and through the hearing in the IPR. And so even if you thought you had, for instance, jurisdiction to review the Joinder decision, ultimately, there would be no harm in having joined Intel because the board could have and would have reached the same outcome based solely on PQA's petition. They could have reached the same outcome without any petition at all. It's not clear as to why it's necessary to join Intel in the IPR proceeding. And it's not, well, at the same time, Intel has waived its invalidity defense, as I said before. But you explain part of that. So the standard for Joinder is not whether it's necessary to join. It's a discretion. It's a discretion that the statute gives to the director. And so the director can decide to join a petition that meets the requirements as a matter of discretion. Our position is this court can't review it. But even if you could review it, it would be reviewed for abuse of discretion. And the standard is not, is it necessary to do so? The standard is, did the board abuse its discretion in Joinder in this case? And they haven't shown any basis for, and we've talked about the statutory issue. We don't think the time bar even applies here. We don't think there's jurisdiction even to review it. But even if this court were writing on a clean slate, would say, you know, we don't think it was necessary to join Intel. That's not a best basis to find an abuse of discretion on the director's part in joining Intel. So why was it necessary to join Intel? I mean, I don't know that it, I have to, I don't know that it was necessary. And I don't think I need to defend it being necessary to do it. It was up to the director's discretion. There may be many reasons why the director thinks it's useful to have two petitioners where it doesn't change the way that the IPR is going to be handled. It doesn't change the schedule. It doesn't change the issues that are going to be addressed. You know, ultimately that's up to the office's discretion as to how they want to conduct their proceedings. And it's something that, again, I don't think that Congress has given this court jurisdiction to review it. But even if you did, it's far from an abuse of discretion to let a petitioner like Intel into a case like this, where it doesn't ultimately change either the way the proceeding happens or the ultimate outcome the board is entitled to reach on the merits. This issue of whether the director gave enough of an explanation as to what she was doing, I mean, the thickness of the addendum to the blue brief reflects the meticulousness and care with which the director approached all of this. And she, you know, took the accusations very seriously. She ordered briefing, discovery, interrogatory responses, amicus participation. She issued detailed opinions at every step. And she recognized at the beginning when she was taking adverse inferences against PQA that even then a vacator of the institution was not appropriate. Later on, after the further argument from PQA, she determined that adverse inferences were no longer appropriate. By that point, vacator was off the table. It was already off the table even when adverse inferences were being taken against PQA. It certainly wouldn't have become more appropriate after the fact. And she explained why ultimately she found that PQA's behavior was not as serious as open skies and warranted a different remedy. That shows the care that she took with all of this. She didn't treat them the same because she recognized that the behavior was different. VLSI may disagree. That's their prerogative. But that doesn't mean that it was an abuse of discretion to treat these two petitioners differently. I'll point out the conduct in these cases happened four years ago. And we haven't seen a cottage industry of this sort of behavior popping up. A fair inference from all of this is that the deterrent effect of the director's careful treatment of these accusations worked. And it's certainly no abuse of discretion to say that the way in which she balanced the various different considerations here. What did she do with her original abuse of process finding? With this one, ultimately, she determined based on when she considered the accusations and the record anew that there was no abuse of process finding that she was going to maintain. Where did she say that? She says that on page 201 of the appendix. Get the exact language in front of me. She says, although this decision is on a motion for reconsideration, I consider the issues anew because I provided PQA with additional briefing to show cause why I should not be sanctioned. And then later in that opinion, on 241, down the bottom of 241, she says, I find PQA was not only nonresponsive but evasive and responsive. This sort of discovery misconduct would be sufficient to give rise to adverse inferences, as I warned. However, I do not apply and do not need to apply adverse inferences regarding discovery noncompliance with respect to settlement discussions or PQA's relationship with Dr. Singh because of the evidence actually disclosed by VLSI. And then down the bottom, notes again in footnote 28 and 29, I do not need to rely on adverse inferences. I don't reach arguments based on them. And then says PQA makes arguments it did not seek to extort money. She says these arguments are moot because this decision does not make such a finding based on the record and the consideration anew based on the new information and new briefing she had received. One may disagree with the outcome that she reached, but it is certainly not an abuse of discretion. As I mentioned in the argument in the previous case, I know of no case, and counsel for VLSI has not identified one, where this court or any appellate court has said that when a tribunal, an agency, a district court is evaluating sanctionable conduct that occurs in front of it, that the sanction that it has chosen, if it is within the reasonable range authorized, is an abuse of discretion because it wasn't severe enough. This decision, if the court goes VLSI's way, would be the first one that I know of that says that the tribunal that was charged with evaluating conduct in front of it was somehow abusing its discretion in how it resolved the sanction because it was insufficiently severe. And we would submit that VLSI has given you no reason to be the first court to issue a decision like that. I didn't hear anything from Mr. Lampkin about the patent merits, so I won't address it unless the court has questions. Otherwise, we would respectfully submit that the decision of the board should be affirmed. Thank you, Your Honors. Okay. Mr. Mayeron. May it please the Court. One point that I want to echo is that in the sanctions decision, as my colleague noted, or my friend noted, the director said that she was considering the issues anew, and she determined to sanction PQA for two acts of misconduct, the failure to comply with the mandatory discovery and what she identified as misrepresentations in the record. She did not base the sanctions on PQA's intent or purpose in filing the IPRs. And the sanctions decision she made was— What did she do with the original abusive process finding? Do you agree with Mr. Fleming about that? So, the original filing, she provides notice to the parties that she's considering sanctions. She receives a briefing from the parties, including PQA, about whether there was sanctionable misconduct and what the appropriate sanction should be. And then the then-director considers anew what the appropriate sanction is and what conduct is sanctionable. And so, the director was aware of case law that prescribes what types of conduct are sanctionable and may not be sanctionable. What did she do with her factual findings? Did she change them? So, she— Does not rely on what she had found earlier? What's your view of what she did? The best reading of her opinion is that she vacated them. So, she says, this is Appendix 242 in footnote 29, discussing PQA's focus in implementing these AI proceedings. The director says, PQA makes arguments that it did not seek to extort money from VLSI. These arguments are moot because this decision does not make such a finding. So, she didn't make a finding one way or another about whether PQA sought to extort money from VLSI. Unless your honors have any other questions. Okay. Thank you. Mr. Lampkin, you have two minutes. Oh, and Mr. Banner, sorry. Thank you, your honors. Mr. Brian Banner on behalf of PQA. May it please the court. I want to address VLSI's effort to group PQA and OpenSky into the same category and brand this proceeding as extortion. That narrative is not supported by this record. OpenSky is the case where the director found the petitioner offered to undermine or not vigorously pursue the IPR in exchange for money, and that is not what PQA did. PQA filed its petition, retained an expert, paid the expert, prosecuted the case through trial, and obtained final written decision holding every challenge claim unpatentable. PQA did not walk away. It did not offer to sabotage the IPR. And when the director dismissed PQA, PQA sought mandamus relief from this court so that it could stay in the case and preserve its rights. Now, VLSI emphasizes the fact that PQA, quote, demanded money, but omits critical context around that. VLSI initiated the settlement discussions with PQA twice after PQA declined VLSI's first request. That's Appendix 1627 and Appendix 4833. And after VLSI breached the NDA regarding those settlement discussions, PQA filed a stipulation with the board that it would not accept money from VLSI. That's Appendix 1284. So there's no sound basis for VLSI's repeated accusations of extortion and abuse of process. That simply did not happen. And that's why the director, when she considered the issues anew, Appendix 201, which we've kind of discussed at length here, declined to find extortion or an abuse of process. As the PTO just pointed out at Appendix 242, Note 29, she expressly said there's no extortion finding in this renewed decision. At Appendix 236, Note 25, she said there's no sanctions based on PQA's motive for filing the petition. That was the entire basis in the original petition for finding the abuse of process. So all of that confirms that there is no abuse of process. There's no extortion in this case. And unless the court has any questions, PQA rests on its briefs and asks that the court affirm the decision below. Okay. Thank you. Mr. Lambkin, you have two minutes. Thank you, Your Honor. I'd like to begin with the comment that somehow this case is different. The problem is the director made findings that PQA was formed for the express and sole purpose of extracting a payment, that it had a singular focus on using it to extract money, and that it threatened to file additional IPRs unless VLSI paid. Those findings were never set – the director never said there's no basis for those findings, they are wrong, I made a mistake, I'm withdrawing them because of some problem. The director simply, in the words of PTO counsel, said, decided not to address it. There's no finding one way or another. But if you're choosing a sanction, you're going to have to decide what the misconduct does. You can't just say, you know what, there may have been really horrendous conduct here, but I'm not going to decide or I'll close my eyes to my prior findings and just pretend it went away. Now I know my brother here says that, well, actually the director gave a good reason, because the director decided I'm not going to rely on adverse inferences anymore. But that truncates the quote. The director said that there's no need for adverse inferences from noncompliance with respect to settlement discussions or PQA's relationship with Dr. Singh. That doesn't get rid of the finding that there's a threat to file other IPRs absent payment money. It doesn't get rid of the fact that PQA was formed for the sole purpose of extracting money. But even if we say, you know what, maybe the director had additional evidence, what does the director say that evidence shows? Does the director find any reasoned decision to not find abusive process for overturning her prior judgment? And there's simply nothing there. Never says the actual evidence supports it, doesn't support it. If there's anything that's arbitrary, capricious, if there's anything that's a failure of reasoned decision making, it's failing to address an issue that could bear on the appropriate sanction. And that's exactly what happened here. No finding one way or the other. Finally, our argument isn't that it wasn't severe enough. Our argument is it has to go back because coupled with that discretion is the requirement that you comply with the APA's requirement of reasoned decision making. If the rationale isn't there in the decision itself, the decision has to go back for further consideration for the agency. Thank you. I appreciate the court's time. I ask that the judgment be reversed. Thank you all counsel. The case is submitted.